PETTIGREW, J.
|aThis case comes before us on remand by order of the Louisiana Supreme Court. The appellant, Janice Sullivan, challenges the re-allotment of her case and the trial court’s February 12, 2016 judgment, which granted sole custody of her minor child to the child’s father, the appellee, David Henry, and only allowed her supervised visitation for eight hours each .week. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Ms. Sullivan and Mr. Henry were never married, but are the parents of a daughter born on December 11, 2012. In June 2016, Mr. Henry filed a petition to establish paternity and custody. The matter was set for a Hearing Officer Conference on August 3, 2016, and a judge hearing on October 22, 2015. Shortly after filing his original petition, Mr. Henry filed an ex parte motion for custody in which he alleged that Ms. Sullivan had indicated she might attempt suicide and had done so by swallowing a handful of Valium while drinking alcohol. Mr. Henry further alleged that the hospital had sent Ms. Sullivan to a psychiatric hospital for a seventy-two hour hold. Based upon the allegations contained in Mr. Henry’s ex parte motion, the trial court granted Mr. Henry temporary sole custody of the minor child and ordered that there be no .visitation by Ms. Sullivan until further court orders. The trial court also scheduled a hearing for July 16, 2016.
In response, Ms. Sullivan filed an ex parte motion asking the trial court to reset the hearing for an earlier date because she was scheduled to-take .a. nursing school exam on July 16. Ms. Sullivan also requested that pending the hearing, she be granted supervised visitation, with her parents providing the required supervision at their home. In addition, Ms. Sullivan further alleged that Mr. Henry had a trial set for July 24, 2016, on a second offense driving under the influence and careless operation of a vehicle and that he had not been with the child more than a few hours prior to filing his ex parte request for custody.
In an order signed on June 30, 2016, the trial court granted Ms. Sullivan -visitation on a rotating two day schedule, said visitation to be supervised by the |Rmaternal grandparents,. The trial court further, ordered that Mr. Henry not drive with the minor, child pending the hearing, reset for July 9,2016.
At the July 9, 2015 hearing, the parties entered into a stipulated judgment that the trial court signed on July 28, 2015. In the judgment, Mr, Henry and Ms. Sullivan agreed to submit to a brief forensic custody evaluation by Dr. A. James Klein, who was vested with the authority to determine the minor child’s need for a separate psy *1266 chological evaluation and the parties’ needs for any substance abuse and mental health evaluations. Ms. Sullivan agreed to complete and execute authorizations allowing Mr. Henry access to her medical records for three healthcare providers (related to Mr. Henry’s report that Ms. Sullivan had attempted suicide). Both parties agreed to submit to hair and urine drug testing. Pending a future hearing, Mr. Henry and Ms. Sullivan agreed to rotate physical custody of the minor child every three days with the exchanges to take place at 5:00 p.m. at a local drug store. Ms. Sullivan agreed that her physical custody of the minor child would be supervised by one or both of her parents. Mr. Henry stipulated that he would only drive the minor child in a vehicle installed with an ignition interlock device. Both parties agreed not to be under the influence of alcohol, illegal drugs, or prescription drugs for which they did not have a prescription while the minor child was in their physical custodies.
The matter proceeded to hearing in Division L, before Judge Dawn Amacker, on October 22, 2015. Following testimony from several witnesses, and considering the documentary evidence introduced by the parties, Judge Amacker issued an oral ruling particularly noting her concerns regarding Ms. Sullivan’s mental health issues and Ms. Sullivan’s ability to parent the minor child. Judge Amacker ruled that Mr. Henry should be granted sole custody of the minor child, with Ms. Sullivan having supervised visitation pending a full psychiatric evaluation. Counsel for Mr. Henry was to prepare a judgment in accordance with Judge Amacker’s ruling.
However, prior to Judge Amacker signing a written judgment, Ms. Sullivan’s counsel withdrew from representation. On November 2, 2015, Richard Ducote enrolled as new counsel for Ms. Sullivan and moved for Judge Amacker’s recusal. In support of | ¿the motion for recusal, Ms. Sullivan alleged that Richard Ducote and Judge Amacker “have a very contentious relationship ... which [has] prompted Judge Amacker to voluntarily recuse herself in other proceedings.” Ms. Sullivan further asserted that recusal was mandated because Judge Amacker was “biased and prejudiced against counsel to such an extent that she cannot conduct fair and impartial proceedings.” Lastly, she alleged Judge Amacker’s husband’s law firm was involved in an unrelated suit brought by Ms. Sullivan’s family.
In a November 10, 2015 order, Judge Amacker voluntarily recused herself from the case, explaining, in pertinent part:
Richard Ducote has chosen to engage in public conduct that personally and professionally attacks Judge Amacker. The Court does not agree that Mr. Du-cote’s conduct has caused Judge Amacker by design or effect to be biased or prejudiced against him to such an extent that his clients may not receive fair and impartial treatment. Furthermore, the Court had no prior knowledge of the lawsuit cited by Mr. Ducote, and after inquiry does not agree that the Court is required to recuse on that basis as the case he cites was dismissed on May 14, 2015; Mr. E.B. Dittmer, II, did not represent any party involved in that proceeding; and finally, that proceeding has absolutely no connection to the case at issue.
The Court does find that voluntary recusal is appropriate, to avoid even an appearance of impropriety, in any case in which Richard Ducote is enrolled as counsel of record for one of the parties and therefore voluntarily recuses in the above captioned matter.
Judge Amacker ordered that the case be re-allotted to Division K, presided over by Judge Mary Devereux, which, like Division *1267 L, has jurisdiction limited to family and juvenile matters pursuant to La. R.S. 13:621.22(B) as follows:
B. There are hereby created two additional district judgeships for the Twenty-Second Judicial District for the parishes of St. Tammany and Washington.
(1) The first additional judge provided for in this Subsection and his successors shall preside over Division K, which is hereby created for purposes of nomination, election, and subject matter only. The subject matter jurisdiction of Division K is limited, under the provisions of Article V, Section 15(A) of the Constitution of Louisiana, to family and juvenile matters as provided by law.
(2) The second additional judge provided for in this Subsection and his successors shall preside over Division L, which is hereby created for purposes of nomination, election, and subject matter only. The subject matter jurisdiction of Division L is limited, under the provisions of Article V, Section 15(A) of the Constitution of Louisiana, to family and juvenile matters as provided by law.
|s(3) For purposes of this Subsection, “family and juvenile matters” shall include all actions arising under Titles IV, V, and VII of Book I and Title VI of Book III of the Civil Code and related provisions of the Civil Code Ancillaries, all actions arising under the Children’s Code, adoptions arising under the Civil Code, actions involving protection from family violence pursuant to R.S. 46:2131 et seq., and actions for enforcement, collection of support, and paternity pursuant to R.S. 46:236.1.1 et seq.
(4) For purposes of this Subsection “juvenile matters” shall include but not be limited to all actions arising under or incidental to the Children’s Code.
(5) For purposes of this Subsection, the subject matter jurisdiction shall also include all actions incidental to all matters listed in Paragraphs (3) and (4) of this Subsection, including but not limited to contempt, civil warrants, writs of ha-beas corpus, curatorship, change of name, prenuptial or separate property agreements, interspousal donations, lesions, and challenge to consent judgment.
Ms. Sullivan objected to the re-allotment, arguing that the case should have been randomly allotted amongst all the divisions of the 22nd Judicial District Court. Judge Devereux denied Ms. Sullivan’s objection and subsequent motion for new trial. Thereafter, on February 12, 2016, Judge Devereux signed a judgment and issued written reasons for judgment. Judge Devereux stated that she had reviewed the evidence from the October 22, 2015 hearing and found that she needed no additional evidence to render judgment. Judge Devereux noted:
A record has already been made which this court has reviewed and if a court can accept, reject or modify a Hearing Officer’s findings, a substitute judge, after reviewing the record and the evidence, should be able to do the same with a judge’s findings. To treat a sitting judge’s reasons for judgment any differently than a Hearing Officer’s recommendation would be illogical and disrespectful. This court therefore determines at least the same level of deference should be accorded a judge who has received evidence and issued reasons for judgment as a Hearing Officer’s recommendation under ... La. R.S. 46:236.5.
Ms. Sullivan appealed Judge Devereux’s February 12, 2016 judgment to this court.
In Henry v. Sullivan, 2016-0564 (La. App. 1 Cir. 9/16/16), 203 So.3d 501, writ granted, judgment vacated, 2016-1867 (La. 11/18/16), 206 So.3d 858 (per curiam) *1268 (Henry I), we vacated Judge Devereux’s judgment and rémanded the case to the trial court for further proceedings. In Henry I, we specifically held that Judge Devereux did | nnot qualify as a “successor” judge pursuant to La. R.S. 13:4209.[1] We explained that Judge Amacker had re-cused herself from the case and had not left office under any of the enumerated conditions mentioned in La. R.S. 13:4209(B). See Henry I, 2016-0564 at 4, 203 So.3d at 503 (citing Starkey v. Starkey, 2013-0166, p. 6 (La. App. 1 Cir. 8/6/13), 122 So.3d 579, 583).
The Louisiana Supreme Court granted Mr. Henry’s writ application and reversed our decision, explaining:
The . plain language of La. R.S. 13:4209(B)(2) provides, “[i]f a prior judge has stated an affirmative intent to sign a judgment and failed to do so for whatever reason, the successor judge is empowered to sign the judgment.” [emphasis added]. In the instant case, Judge Amacker, through her oral reasons, clearly manifested an affirmative intent to sign a judgment in favor of relator. Therefore, Judge Devereux, in her capacity as successor judge, is empowered to sign the judgment. Any other result would be contrary to the statutory intent as well as the interests of judicial economy.
Accordingly, the writ is granted. The judgment of the court of appeal is vacated and set aside. The district court’s February 12, 2016 judgment is reinstated, and the case is remanded to the court of appeal for consideration of the appeal on the merits.
Henry v. Sullivan, 2016-1867, p. 1 (La. 11/18/16), 206 So.3d 858 (per curiam) (Henry II).
Thus, we are constrained to follow the Louisiana Supreme Court’s order, vacating our decision in Henry I and remanding the case to this court for consideration of the merits of the appeal. We now address the five assignments of error-raised by Ms. Sullivan.
LRE-ALLOTMENT OF CASE
(Assignments of Error Nos. 1 and 4)
In assignment of error number one, Ms. Sullivan asserts that Judge Amacker erred by directly re-allotting this case to Judge Devereux and by refusing to order the case’s random re-allotment pursuant to La. Code Civ. P. art. 253.1.[2] In *1269 her related fourth assignment of error, Ms. Sullivan asserts that Judge Devereux erred by “improperly deeming herself as a ‘successor judge’ to Judge Amacker” and “in entering a final judgment in violation of [La.] R.S. 13:4209 based solely on evidence heard by the recused Judge Amacker[.]”
As previously discussed, Judge Amacker recused herself from this case and ordered that the matter be re-allotted to Judge Devereux after Richard Ducote enrolled as counsel for Ms. Sullivan. Thereafter, Judge Devereux rendered judgment on February 12, 2016, based on her analysis of the evidence submitted at the October 22, 2015 hearing before Judge Amacker. The Louisiana Supreme Court determined that Judge Devereux was entitled to sign the judgment in her capacity as a successor judge pursuant to La. R.S. 13:4209. See Henry II, 2016-1867 at 1, 206 So.3d at 858. Accordingly, pursuant to the Louisiana Supreme Court’s holding, we are bound to conclude that there was no error in Judge Amacker’s decision to re-allot the case to Judge Devereux, following Judge Amacker’s voluntary recusal. Similarly, we are constrained to find no error as it concerns Judge Devereux’s authority to decide this case based on the October 22, 2015 transcript and Judge Amacker’s oral ruling concerning same, Ms. Sullivan’s first and fourth assignments of error are without merit.
[ sEvidentiary Ruling
(Assignment of Error No. 2)
In her second assignment of error, Ms. Sullivan contends Judge Amacker abused her discretion in excluding Julie Glover as a trial witness at the October 22, 2015 hearing. Ms. Sullivan alleges that Julie Glover was an important witness “who would have refuted inaccurate statements attributed to her [Julie Glover] as fact” in various progress notes to which Judge Amacker erroneously gave great weight in her negative assessment of Ms. Sullivan.
According to the record, before Julie Glover took the witness stand to testify, Mr. Henry’s counsel objected, arguing that Ms. Sullivan and Julie Glover had violated the witness sequestration order. Judge Amacker then questioned Tedra Marrero, a corroborating witness about what she heard Ms. Sullivan say to Julie Glover during an earlier court recess. The following colloquy occurred:
[BY THE COURT]: What did you hear?
[BY MS. MARRERO]: She [Ms. Sullivan] came out of the door quickly and she walked over to [where] her mom'and her sister were sitting; and she said: [“] We need to talk.” And so they got up to step away. And she said: “No. Grab your stuff.” And then they got on the elevator. ■
[COUNSEL FOR MS. SULLIVAN]:
They went to smoke a cigarette.
THE COURT:
Well, your client said [they] need to talk was not said, as I recall; is that correct?
MS. SULLIVAN:
I just said: “Will you come down with me so we can smoke a'cigarette.”
THE COURT:
Is that what you heard her say?
[MS. MARRERO]:
*1270 No.
Thereafter, Judge Amaeker made the following ruling regarding Julie Glover’s testimony:
The Court is—I am making the decision at this point that I have a real sincere suspicion that the order of sequestration has been breached. I don’t have any positive evidence of it. But that is what it is sounding like happened. I was mainly wanting to get to the truth of very disturbing |9statements that were apparently made in connection with collateral information at Savoy [Medical Center].
But it appears to me that any information I would be getting from this witness at this point might possibly be tainted by what has been said or done in this courtroom. And therefore, I am not going to ask her to testify.
And, ma’am, you can leave the courtroom at this point.
Louisiana Code of Evidence article 615(A) states, in pertinent part:
On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case.
The purpose of the sequestration article is to prevent witnesses from being influenced by the testimony of earlier witnesses. See State v. Chester, 97-2790, p. 8 (La. 12/1/98), 724 So.2d 1276, 1282, cert. denied, 528 U.S. 826, 120 S.Ct. 75, 145 L.Ed.2d 64 (1999). The disqualification of a witness for violation of a sequestration order is governed by Article 615(C), which provides that if all other sanctions are insufficient, the trial judge may disqualify the witness. La. Code Evid. art. 615(C). The trial judge, in his/her discretion, may determine the disqualification of a witness when a rule of sequestration has been violated. State v. Stewart, 387 So.2d 1103, 1107 (La. 1980). This ruling will not be disturbed absent an abuse of the trial court’s discretion. Id.
The appropriate sanction for violation of a sequestration order is within the trial judge’s sound discretion. See State v. Beach, 610 So.2d 908, 914 (La. App. 1 Cir. 1992), writs denied, 614 So.2d 1252 (La. 1993), 644 So.2d 389 (La. 1994); see also Briscoe v. Briscoe, 25,985, p. 6 (La. App. 2 Cir. 8/17/94), 641 So.2d 999, 1004-1005. Based on our review of the record herein, we agree with Judge Amacker’s decision to disqualify Julie Glover as a trial witness in this case. Another sanction, such as contempt, would have been insufficient as it would not have prevented the tainted testimony from entering the record. The ruling excluding Julie Glover as a witness was not an abuse of discretion. This assignment of error lacks merit.
hnJUDGE DEVEREUX’S FINAL JUDGMENT
(Assignment of Error No. 5)
In assignment of error number five, Ms. Sullivan challenges the correctness of Judge Devereux’s final judgment, granting sole custody to Mr. Henry and limiting Ms. Sullivan to eight hours of supervised visitation per week. Ms. Sullivan argues that the record does not show clear and convincing proof under La. Civ. Code art. 132 that a grant of sole custody to Mr. Henry was in the child’s best interest, and, thus, the judgment must be reversed. We find no merit to this argument.
Generally, the trial court shall award custody to the parents jointly; however, if custody to one parent is shown by clear and convincing evidence to serve the *1271 best interest of the child, the court shall award custody to that parent. La. Civ. Code art. 132. Every child custody case is to be viewed on its own particular set of facts and the relationships involved, with the paramount goal of reaching a decision that is in the best interest of the child. The trial court is vested with broad discretion in deciding child custody cases. Appellate courts must be vigilant to not retry cases. A trial court’s determination regarding child custody will not be disturbed absent a clear abuse of discretion. Martello v. Martello, 2006-0594, p. 5 (La. App. 1 Cir. 3/23/07), 960 So.2d 186, 191-192.
The paramount consideration in any determination of child custody is the best interest of the child. La. Civ. Code art. 131; Kirsch v. Kirsch, 2015-0281, p. 8 (La. App. 1 Cir. 7/29/15), 180 So.3d 417, 422, writ denied, 2015-1626 (La. 9/18/15), 178 So.3d 153. In determining the best interest of the child, La. Civ. Code art. 134 enumerates twelve factors to be considered by the trial court. In the instant case, Judge Devereux reviewed the evidence from the October 22, 2015 hearing before Judge Amacker, including the transcript, the exhibits, and the pleadings, and analyzed the Article 134 factors in light of this evidence. Judge Devereux concluded:
Another concern this court has is that it was apparent from [Ms. Sullivan’s] testimony and the schedule of seeing her therapist that she has been seeking therapy solely for the purpose of attempting to convince this court that she is seeking help. The evidence overwhelmingly] points to [Ms. Sullivan] being in denial of her issues and this is further complicated by the fact that the maternal family is fostering [Ms. Sullivan’s] denial.
InThe most distressing issue is [Ms. Sullivan’s] false allegations of sexual abuse made against [Mr. Henry] not only as to their child but to [Mr. Henry’s] stepchild; [Ms. Sullivan’s] allegations were made in an attempt to avoid having the minor child at issue interviewed by Dr. Klein and were said in an- attempt to bully [Mr. Henry] into not seeking custody of the child. This coupled with the fact that [Ms. Sullivan] did not foster a relationship between [Mr. Henry] and the child leads the court to believe that she is not presently capable of doing that and will use whatever she can, false or not, in an attempt to keep an upper hand.
The best interest of the child standard is a fact-intensive inquiry that requires the weighing and balancing of factors concerning the issue of custody on the basis of the evidence presented. The trial court is in the best position to ascertain the best interest of the child and any findings made in furtherance of that best interest should not be disturbed on appeal absent a clear showing of abuse of discretion. Martello, 2006-0594 at 5, 960 So.2d at 191-192. We have thoroughly reviewed the record and evidence in its entirety. Considering the particular facts and the relationships involved in this case, we find no manifest error in Judge Devereux’s factual determinations, including the determination that Ms. Sullivan is “either in denial of her [substance abuse] issues or thought she could he about the problem so that the court would not become aware of it.” The evidence in the record overwhelmingly supports the granting of sole custody to Mr. Henry and the award of supervised visitation to Ms. Sullivan. Having found no manifest error or abuse of discretion, we defer to the trial court’s well-reasoned ruling.
MOTION FOR NEW TRIAL
(Assignment of Error No. 3)
Turning to the motion for new trial, Ms. Sullivan contends that Judge *1272 Devereux erred as a matter of law and manifestly abused her discretion in denying her motion for new trial. Generally, the denial of a motion for new trial is an interlocutory and non-appealable judgment. McKee v. Wal-Mart Stores, Inc., 2006-1672, p. 8 (La. App. 1 Cir. 6/8/07), 964 So.2d 1008, 1013, writ denied, 2007-1655 (La. 10/26/07), 966 So.2d 583. However, an appellate court may consider interlocutory judgments, such as the denial of a motion for new trial, as part of an unrestricted appeal from a final judgment. GE Commercial Finance Business Property Corp. v. Louisiana Hosp. Center, L.L.C., 2010-1838, p. 6 n.4 (La. App. 1 Cir. 6/10/11), 69 So.3d 649, 653 n.4. Because Ms. Sullivan’s challenge of the trial court’s denial of her motion for new trial is part of the appeal from the final judgment, we may consider the issue on appeal.
A new trial shall be granted upon contradictory motion of any party when the judgment appears clearly contrary to the law and the evidence or when the party has discovered new evidence that he could not have obtained before or during trial. La. Code Civ. P. art. 1972; Pope v. Roberts, 2013-1407, p. 8 (La. App. 1 Cir. 4/16/14), 144 So.3d 1059, 1065. In addition, a discretionary ground for a new trial is set forth in La. Code Civ. P. art. 1973, which authorizes a trial court to' grant a new trial in any case if there- is good grounds therefor. Louisiana jurisprudence is clear that a new trial should be ordered when the trial court, exercising its discretion, is convinced by its examination of the facts that the judgment would result in a miscarriage of justice. Pope, 2013-1407 at 8, 144 So.3d at 1065. The denial of a motion for new trial, whether on peremptory or discretionary grounds, should-not be reversed unless there has been an abuse of the trial court’s discretion. Rao v. Rao, 2005-0059, p. 7 (La. App. 1 Cir. 11/4/05), 927 So.2d 356, 361, writ denied, 2005-2453 (La. 3/24/06), 925 So.2d 1232. Applying these precepts to the case before us,, we find no error.
Ms. Sullivan maintains'that Judge Dev-ereux clearly erred and abused her discretion in denying her motion for new trial. Ms. Sullivan maintains that Judge Dever-eux was not a successor judge under La, R.S. 13:4209 and eould not render a judgment based upon the October 22, 2015 proceedings before-Judge Amacker. As we previously discussed in connection with Ms. Sullivan’s assignments of error numbers one and four, we are bound by the Louisiana Supreme Court’s holding in Henry II that Judge Devereux was entitled to sign the February 12, 2016 judgment in her capacity as a successor judge to Judge Amacker pursuant to La. R.S. 13:4209. See Henry II, 2016-1867 at 1, 206 So.3d at 858. Thus,, to the extent that Ms. Sullivan challenges Judge Devereux’s denial of her motion for new trial on procedural grounds, we are constrained to conclude that Judge Devereux did not abuse her discretion in so ruling.,
I min further support of her position regarding the motion for new trial, Ms. Sullivan suggests that a new trial should have been granted based on new developments regarding both parents, but offers no evidence of new developments between the parties, Ms. Sullivan . next argues that Judge Amacker’s exclusion of Julie Glover’s testimony and Dr. Klein’s report warranted a new trial. Finally, Ms. Sullivan points to-, her original recusal motion of Judge Amacker as a basis for a new trial. Ms, Sullivan asserts ■ that based on the clear conflict of interests between herself and Judge Amacker, Judge Amacker should not have presided over this matter in any way and should have recused herself ab initio. Ms. Sullivan points to the two evidentiary rulings made by Judge *1273 Amacker at the October 22, 2015 hearing, i.e., the exclusion of Julie Glover’s testimony and Dr. Klein’s report, and suggests that these rulings “completely derailed accurate fact-finding and significantly contributed to the current custodial arrangement which is grossly contrary to the child’s best interest.”
Given our foregoing analysis, Judge Devereux’s judgment was not contrary' to the law and the evidence. Thus, Ms. Sullivan was not entitled to a new trial on that peremptory basis, and the trial court did not abuse its discretion in denying her motion for new trial in that respect. Our review of the record further discloses no abuse of discretion in the trial court’s denial of a new trial on discretionary grounds. See La. Code Civ. P. art. 1973.
With regard to Ms. Sullivan’s motion to recuse, Judge Amacker’s voluntary recusal on November 10, 2015, rendered any alleged conflict of interest moot. As noted by Judge Amacker in the order, of recusal, “Richard Ducote [had] chosen to engage in public conduct that personally and professionally attacks Judge Amacker.” Judge Amacker did not agree that Richard Du-cote’s conduct had caused her “by design or effect to be biased or prejudiced against him to such an extent that his clients may not receive fair and impartial treatment.” Nonetheless, to avoid even the appearance of impropriety, Judge Amacker found that voluntary recusal was appropriate from any case in which Richard Ducote was enrolled as counsel of record.
|uWe note that another case was recently before this court involving a voluntary recusal by Judge Amacker for these same reasons. Donahue v. Donahue, 2016-0757 (La. App. 1 Cir. 6/2/17), — So.3d -, writ granted, judgment vacated, 2016-1853 (La. 11/18/16), 206 So.3d 858 (per curiam). As in the instant case, in Donahue, Richard Ducote filed a similar motion to enroll as counsel of record, and motion- to recuse, after a full evidentiary hearing before Judge Amacker had concluded and an unfavorable ruling for his client was imminent. In fact, a judgment had already been prepared and filed for. Judge Amacker’s signing. Donahue, 2016-0757 at 3, — So.3d at -. We are certainly not privy to the “public conduct” Richard Ducote has engaged in concerning Judge Amacker that resulted in Judge Amacker’s voluntary recusal “in any case in which Richard Ducote is enrolled as counsel of record for one of the parties.” However, we do recognize a pattern of behavior by Richard Du-cote that is, at the very least, concerning to this court.,Moreover, we agree with the concurrence in Donahue, wherein Justice Crichton stated, in pertinent part, as follows:
In. my view, attorney Richard Du-cote’s actions in this case are inconsistent with our Professionalism Guidelines and the efficient administration of our court system. See La. Sup. Ct. Rules, Part G. § 11. See also La. Rules of Prof. Conduct R. 8.3(d) (“It is professional misconduct for a lawyer to [e]n-gage in conduct that is prejudicial to the -administration of justice.”); Disaster Restoration Dry Cleaning, LLC v. Pellerin Laundry Mach. Sales Co., 05-0715 (La. 4/17/06), 927 So.2d 1094 (noting that the right to engage an attorney of the party’s choice must be balanced with “society’s right. to maintain the highest ethical standards of professional responsibility, as well as judicial integrity”). While the per curiam corrects the legal derailment, which has cost considerable time and resources, we are left with ethical and professionalism questions which warrant further serious examination.
Donahue, 2016-1853 at 2, 206 So.3d at 859.
*1274 Concerning the evidentiary issues as they relate to the motion for new trial, we have previously concluded that Judge Amacker’s ruling excluding Julie Glover as a witness was not an abuse of discretion. Thus, this evidentiary ruling has no bearing on our review of Judge Devereux’s denial of the motion for new trial. With regard to Dr. Klein’s report, the record is clear that neither party called Dr. Klein as a witness. When counsel for Ms. Sullivan attempted to introduce Dr. Klein’s report into evidence, counsel for Mr. Henry objected. Judge Amacker ruled as follows: “It’s clearly hearsay. He | ^could have been called as an expert and he wasn’t. I have not seen it. It’s not in the record.... So at this point, it is not going to be allowed to be offered into evidence.”
Generally, the trial court is granted broad discretion on its evidentiary rulings and its determinations will not be disturbed on appeal absent a clear abuse of that discretion. In re Succession of Wagner, 2008-0212, p. 7 (La. App. 1 Cir. 8/8/08), 993 So.2d 709, 716. Because authentication of evidence is a condition precedent to admissibility, an exhibit that is not authenticated does not constitute competent evidence. Nikolaus v. City of Baton Rouge/Parish of East Baton Rouge, 2009-2090, p. 3 (La. App. 1 Cir. 6/11/10), 40 So.3d 1244, 1246. Evidence must either be authenticated as provided in La. Code Evid. art. 901, or it must be self-authenticating. Price v. Roy O. Martin Lumber Co., 2004-0227, p. 8 (La. App. 1 Cir. 4/27/05), 915 So.2d 816, 822, writ denied, 2005-1390 (La. 1/27/06), 922 So.2d 543. See La. Code Evid. art. 902. Based on the applicable law and our review of the record, we find no abuse of discretion in Judge Amacker’s ruling excluding Dr. Klein’s report from evidence. Accordingly, we affirm Judge Devereux’s judgment denying Ms. Sullivan’s motion for new trial.
CONCLUSION
For the above and foregoing reasons, we affirm the February 12, 2016 judgment of the trial court. All costs associated with this appeal are assessed against Ms. Sullivan.
AFFIRMED.
Penzato, J. concurs

. Louisiana Revised Statute 13:4209 states:
A. In all cases heard and taken under advisement of the district judge or judges of tire city courts, if the judge before whom a case is tried dies, resigns, or is removed from office, or if his term expires before rendering his judgment in the case, his successor in office shall decide the case from the evidence in the record, if all of the testimony is in writing, If it is a case in which the testimony has not been reduced to writing, the succeeding judge shall decide the rase from a statement of the facts, if one is found in the record, or if the parties to the suit agree upon a statement of facts. If the testimony is not in the record, and there is no statement of facts, the case shall be tried de novo,
B. (1) In cases which are heard and in which judgment is rendered, but not signed, whether the case was taken under advisement or not, if the judge who rendered the judgment dies, resigns, or is removed from office, or if his term expires before signing judgment in the case, his successor in office shall have the authority to sign a judgment which conforms with the judgment rendered.
(2) If a prior judge has stated an affirmative intent to sign a judgment and failed to do so for whatever reason, the successor judge is empowered to sign the judgment.

, Louisiana Code of Civil Procedure article 253,1 states:
All pleadings filed shall be randomly assigned to a particular section or division of *1269 the court by either of the following methods:
(1) By drawing indiscriminately from a pool containing designations of all sections or divisions of court in the particular jurisdiction in which the case is filed.
(2) By use of a properly programmed electronic device or computer programmed to randomly assign cases to any one of the sections or divisions of court in the particular jurisdiction in which the case is filed.